IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JON P. KRUG, | ) | CASE NO. 1:11CV00074 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| BENNIE KELLY, WARDEN | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Jon P. Krug ("Krug"), filed this habeas corpus action pursuant to 28 U.S.C. § 2254 on January 12, 2011.  Doc. 1.  Krug challenges the constitutionality of his conviction and sentence in *State of Ohio v. Jon P. Krug*, Case No. 08-CR-000008 (Lake County), and asserts ten grounds for relief.  Krug was convicted of four counts of felonious assault with repeat violent offender ("RVO") specifications and one count of carrying a concealed weapon.  Doc. 9, Exhibit 8.  He was sentenced to a total of thirty-seven years and six months in prison.  Doc. 9, Exhibit 8.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.[1]  For the reasons set forth below, the undersigned recommends that Krug's petition for a writ of habeas corpus (Doc. 1) be **DENIED** and this action be dismissed with prejudice.

In addition, for reasons also set forth below, Krug's "Rule 15(d) supplemental pleading to Traverse" (Doc. 17) is **DENIED** and his "Expansion of Record" (Doc. 11) is **DENIED** as moot.

---

[1] The case was initially referred to United States Magistrate Judge Greg White, but was subsequently reassigned to the undersigned Magistrate Judge pursuant to General Order 2011-18.

## I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Eleventh District Court of Appeals summarized the facts underlying Krug's conviction as follows: [2]

> ¶ 2 In the early hours of December 30, 2007, Mr. Krug went to the Lake Effects bar in Madison, Ohio. At some point in the evening he went into an area in the bar where the bar's owner, Jason Reihner, was playing horseshoes with a group of people. Mr. Krug, wearing headphones and listening to his MP3 player, walked right into the horseshoe pit when one of the players was about to throw a horseshoe. Mr. Reihner confronted Mr. Krug and asked him to leave. He escorted Mr. Krug outside, and a fight between them erupted in the parking lot. As the two exchanged punches, a crowd gathered around them. Harold Layne, a cook at the bar, saw a knife in Mr. Krug's left hand and jumped into the fight to help Mr. Reihner. Both Mr. Layne and Mr. Reihner were stabbed. As Mr. Krug walked away, he was tackled to the ground by several bar patrons, who managed to pry the knife from his hand.

> ¶ 3 Mr. Reihner was air-lifted to the Metro Health Medical Center in Cleveland to treat the stab wound to his abdomen. His spleen and part of his pancreas were removed and he was hospitalized for two-and-a-half weeks. Subsequently, he developed a related blood clot in his lung, for which he was hospitalized for another week.

> ¶ 4 Mr. Layne, who suffered a stab wound to his abdomen that caused his intestines to protrude from his body, was air-lifted to the University Hospital in Geneva. He had part of his intestines removed as a result of the stab wound and was hospitalized for two weeks.

> ***

---

[2] The facts are taken from the decision in Krug's appeal to the Eleventh District Court of Appeals. Doc. 9, Exhibit 14.

¶ 7 Before trial, the state filed a motion in limine to exclude evidence regarding police reports of incidents that occurred previously at the Lake Effects bar. The court granted that motion. At the jury trial, 14 witnesses testified for the state and three for the defense, including Mr. Krug himself. The court also admitted 75 exhibits introduced by the state. The state and the defendant offered different accounts of how Mr. Reihner and Mr. Layne were stabbed during the fight.

¶ 8 **Witnesses for the State**

¶ 9 Mr. Reihner, the owner of the bar and one of the two victims, testified that when Mr. Krug walked into the horseshoe area in the middle of a game, he yelled to him: "Hey you gotta watch yourself around here. We're throwing horseshoes. Keep your head up." Mr. Krug made a vulgar gesture at him and then walked to a group of female patrons playing cornhole and attempted conversations with them. When Mr. Reihner asked him to leave them alone, Mr. Krug went to the bar area and argued with a patron there. Mr. Reihner identified himself as the bar owner and asked Mr. Krug to leave, to which Mr. Krug responded: "Let's take this outside."

¶ 10 Mr. Reihner then walked Mr. Krug out of the bar through a side door. Once they were outside, Mr. Krug "swung at him," and they started to exchange punches. Mr. Layne tried to jump in to break up the fight but Mr. Reihner grabbed Mr. Layne and pushed him away because he did not want him involved. After a few more punches were exchanged, the fight suddenly stopped. Mr. Reihner noticed Mr. Layne lying on the ground. Mr. Layne told Mr. Reihner he was stabbed. Mr. Reihner was surprised because he did not see a knife during the fight. He looked down at Mr. Layne and then saw that his own side was bleeding. For the first time he realized he was stabbed as well.

¶ 11 On the evening of the incident, Mr. Layne was watching television at the bar after finishing his shift in the kitchen. He heard a commotion and followed several people outside though the side door. Once outside, he saw Mr. Reihner and Mr. Krug arguing. At one point, he saw Mr. Krug reaching down to the left side of his leg and pulling out an eight-to-nine-inch-long knife. He took a couple of steps toward Mr. Reihner in an attempt to stop Mr. Krug, who then slung him against the wall and stabbed him. Mr. Layne looked down and saw his blood pouring out. He took a few more steps and collapsed, his intestines pouring out to the ground.

¶ 12 Several patrons who were at the bar that evening also testified, although none witnessed the actual stabbings. Michael Elly was playing horseshoes when Mr. Krug walked through the area. Mr. Reihner asked him to be careful but Mr. Krug responded aggressively, saying to Mr. Reihner "I'll kick your ass." Mr. Reihner then asked him to leave and escorted him out. Mr. Elly went to the bathroom, and when he came out, his wife screamed frantically that "Jason [Reihner] was in trouble." He went outside and saw Mr. Krug held down by several people, and he managed to pry the knife out of Mr. Krug's hand.

3

¶ 13 Jeff Haase, who also participated in the horseshoe game, testified he saw Mr. Krug walk through the horseshoe area. He and Mr. Reihner exchanged words and he heard Mr. Krug say "hey do you want to take this outside." Mr. Reihner responded: "I'm the owner, just get out." Mr. Haase followed Mr. Reihner and Mr. Krug outside and saw the two exchange punches. He estimated there were ten people gathering around watching the fight, but no one else was involved in the fight. Mr. Haase backed away from the fight, and heard somebody yell "he's got a knife, he stabbed him." He then saw Mr. Krug walk out of the crowd, with a knife in his left hand. Mr. Haase hip-checked him to the ground to prevent him from leaving and struggled with him to remove his knife. Mr. Haase injured his face when he head-butted Mr. Krug in an effort to get him to drop the knife.

¶ 14 Mr. Reihner's brother, Herbert Reihner, tried to help Mr. Haase by getting on top of Mr. Krug as he was lying on the ground.

¶ 15 Sonia Vickers, the bartender that night, saw Mr. Reihner escort Mr. Krug out of the side door and she followed them outside. She stood right in front of the two men, who were arguing, pushing, and fighting. At one point Mr. Krug got "the better" of Mr. Reihner and she wondered why no one jumped in to help. She testified no one else was involved in the fight and no one prevented Mr. Krug from leaving. She realized Mr. Layne was stabbed when she saw "his intestines hanging out."

¶ 16 Several firefighters and police officers who were called to the scene of the incident testified regarding how they tended to the two victims and their investigation of the incident.

¶ 17 **Witnesses for the Defense**

¶ 18 Mr. Krug testified on his own behalf. He portrayed Mr. Reihner as the aggressor in the fight. He admitted stabbing both Mr. Reihner and Mr. Layne, but claimed he stabbed Mr. Reihner in self-defense and did not know how Mr. Layne got stabbed.

¶ 19 He testified earlier that day he went fishing with a friend, who had given him a knife the day before. When he returned, he sharpened the knife and put it on a table. Some friends came over to visit and he showed them the knife. When a female friend appeared to be uncomfortable with the sight of the knife, he folded it up and put it away in a sheath and then put it in the overalls he was wearing. Later, he and his friends decided to go to the bars to drink. They went to one bar, and while there, the knife fell out of his overalls as he bent over to play pool. He picked up the knife and put it in his overalls' right pocket.

¶ 20 After the first bar, Mr. Krug and his friends went to the Lake Effects bar. While he was watching an Ultimate Fighting Championship on the bar television,

4

he had a verbal confrontation over the way he was dressed with Herbert Reihner, the bar owner's brother. Before he left, he went to the horseshoe area to say goodbye to a friend who was playing a game there. He inadvertently walked through the horseshoe pit and heard Mr. Reihner yell out. Mr. Krug testified he raised his hand to thank Mr. Reihner for the warning but Mr. Reihner looked visibly upset. As he kept walking, Mr. Reihner called him a "fucking idiot," and said "it's my bar, get the fuck out."

¶ 21 Mr. Krug testified that he then turned around and left, but Mr. Reihner followed him outside, along with five other guys. He testified:

¶ 22 "Jason [Reihner] was calling me a few choice names on the way out. At one point I did look over my shoulder, and I said dude, you don't want to fight me. You want to jump me is what you want to do. And I started walking towards the side door, and I got about halfway to the side door, and Jason come [sic] up behind me and pushed me. When Jason pushed me, I took a few steps and I caught my balance. And I turned around and looked at him, and his buddy, who I now know is Jay Davis, was holding Jason. He was holding Jason back. So I just turned around and left. I left the [sic], I walked straight out the door. I wasn't pushed out the door. I didn't put my hands up to stop."

¶ 23 Mr. Krug testified that he walked through the door to the parking lot and toward a friend who was to give him a ride home. He took about four or five steps before he looked over his shoulder to make sure nobody followed him. About half way to his ride, Mr. Reihner came up behind him and pushed him. He testified Mr. Reihner "came at me like he was gonna try to tackle me to the ground. His face was right here on my thighs, and he had his arms around my legs and he was trying to push me backwards."

¶ 24 Mr. Krug testified that people started to come out of the bar and some of them saw the altercation and headed toward them. He described a mob scene and gave a dramatically different account of what led to his stabbing of both Mr. Reihner and Mr. Layne.

¶ 25 According to Mr. Krug, a crowd was converging around them. Mr. Reihner was trying to take him down and he was trying to push him off. The first person to swing at him was Mr. Layne. A female grabbed Mr. Layne and told him to let them fight it out. Ten people were pushing and grabbing him; one guy held him in a headlock. When he got out of the headlock, "the entire crowd" pushed him into a corner against the wall between a dumpster and an air conditioning unit. He testified that he tried to make his way through the crowd but someone pushed him back against the wall and he and Mr. Reihner were chest to chest. Mr. Reihner's left hand pinned him against the wall. With his back against the wall, he tried to swing at Mr. Reihner with his right arm, but somebody tried to control that arm. At that point, the following occurred:

¶ 26 "Somebody pinned my arm up against my leg. When my arm was pinned against my leg, I realized that [I] still had my knife. I pulled the knife out and I stabbed Jason in the side."

¶ 27 He testified he stabbed Mr. Reihner because he was "afraid" and "terrified." When asked to elaborate, he stated:

¶ 28 "I have no idea. * * * Once I stabbed Jason and he started to back up, he turned around and told somebody, I've been stabbed, leave him alone. Let the guy go. I've been stabbed. He's got a knife. Jason started to back up, and I started to get away from the wall. Once I * * * started to come off of the wall, I remember somebody was trying to control the knife. Some, that's how I, that's how-I personally believe that's how Ray [Layne] got stabbed. I believe he was trying to control my hand and the knife in it. It was pinned against the wall. I remember jerking my hand, but I don't recall who was there, who was holding it. Now I believe it was Ray. I believe that." When asked: "Did you try to stab Ray?" Mr. Krug answered: "No I did not."

¶ 29 Lindsey Cotton, a part-time employee of the Ashtabula County Courthouse, was called as a defense witness, but her testimony did not support Mr. Krug's claim of self-defense. She was at the horseshoe area when Mr. Krug walked through the horseshoe area. He turned around and asked: "Did someone just call me a fucking idiot?" Mr. Reihner told him that he should have watched before he walked through. Mr. Krug then asked Mr. Reihner to "take it outside." Mr. Reihner refused, saying "you can just go. It's 2 o'clock. It's time to go." Mr. Reihner then escorted Mr. Krug outside. People were standing around and watching the two men fight. Some tried to separate the two, who were shoving each other. No one else was involved in the fight and no one other than Mr. Reihner hit Mr. Krug, who would have no reason to fear serious physical harm and was free to walk away at any time. As Ms. Cotton described, the fight between the two was "basically pushing and shoving, and maybe fisticuffs." She did not see Mr. Krug stab Mr. Layne or Mr. Reihner and only realized Mr. Layne was stabbed when Ms. Vickers screamed that he was stabbed. Ms. Cotton helped hold Mr. Krug down on the ground while others tried to pry the knife from his hand.

¶ 30 Jay Davis was also called as a defense witness, but his testimony did not support Mr. Krug's claim of self-defense either. He was playing horseshoes when Mr. Krug walked into the horseshoe area. Everyone said "look out" and Mr. Krug asked: "Did someone just call me an idiot?" Mr. Reihner said "yes, I did. You almost got hit with a horseshoe." Mr. Krug turned around and became aggressive and belligerent, saying "You want to take this outside. Let's go. Let's go." Mr. Reiner said: "that's it, you're out of here." Mr. Krug said: "who the F are you," to which Mr. Reiner responded: "I'm the owner, and you're out of here."

¶ 31 Mr. Davis followed Mr. Reihner and Mr. Krug to the side door. As they reached the side door, he saw Mr. Krug stop before reaching the door and put his arms up, as if saying "I'm not leaving." Mr. Reihner then pushed him toward the door by grabbing Mr. Krug underneath his arms. They both took a couple of steps toward the door. Mr. Reihner then let go and they both walked outside. Once they were outside, Mr. Krug "immediately turned around and started coming at Jason. And again, aggressively and belligerently, saying come on, you want some of this. Let's go. Let's go."

¶ 32 Mr. Krug came at Mr. Reihner and was motioning as if he was going to hit Mr. Reihner, who then put his arms underneath Mr. Krug's armpits and tried to wrestle him to the ground. The two men exchanged blows. Mr. Davis saw Mr. Reihner had Mr. Krug "bent over the dumpster and was hitting him." When Mr. Reihner backed off briefly, Mr. Davis grabbed him on the shoulder and said "that's enough." Around the same time Mr. Layne stepped into the fight. Mr. Reihner went back to the fight for just a second before he turned to Mr. Davis and said "I'm stabbed." Mr. Davis believed Mr. Krug was never in danger of being seriously harmed-he testified he had "witnessed fisticuffs before and [this] was a fairly minor fisticuff."

¶ 33 After the five-day trial, the jury returned a verdict finding Mr. Krug guilty of all five counts. The court imposed a maximum eight-year prison term for each of the four felonious assault counts, and an 18-month term on the count of carrying a concealed weapon. The court merged count one with count two, and merged count three with count four, but ordered the terms for count two, count four, and count five to be served consecutively, which added to a prison term of 17 years and six months.

¶ 34 As for the RVO specifications, the court determined Mr. Krug was a RVO and imposed an additional prison term of ten years for the RVO specification on the merged count two, and another ten-year term for the RVO specification on the merged count four. These two terms are to run consecutively to each other and to the terms imposed for the underlying offenses. Thus, Mr. Krug was sentenced to a total prison term of 37 years and six months.

Doc. 9, Exhibit 14, Judgment Entry, p. 2-11.[3]

---

[3] In its Return of Writ, the Respondent sets forth the facts from the Eleventh District Court of Appeals' Judgment Entry. Doc. 9, p. 2-8. Krug states in his Traverse that he contests the facts as set forth by Respondent because the facts are biased, infer conclusions and exclude facts favorable to Krug. Doc. 14, p. 2-3. Krug sets forth facts not included in the Respondent's recitation of facts. Doc. 14, p. 2-3. Krug has not proven by clear and convincing evidence that the state court's factual findings are incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d at 397.

## II. Procedural Background

### A.  State Conviction

On February 18, 2008, the Lake County Grand Jury indicted Krug on five counts.  Doc. 9, Exhibit 1.  Count one charged Krug with felonious assault involving a deadly weapon in violation of Ohio Rev. Code § 2903.11(A)(2).  Doc. 9, Exhibit 1.  Count two charged Krug with felonious assault involving serious physical harm in violation of Ohio Rev. Code § 2903.11(A)(1).  Doc. 9, Exhibit 1.  The victim of the offenses charged in counts one and two was Harold Layne.  Doc. 9, Exhibit 1.  Count three charged Krug with felonious assault involving a deadly weapon in violation of Ohio Rev. Code § 2903.11(A)(2).  Doc. 9, Exhibit 1.  Count four charged Krug with felonious assault involving serious physical harm in violation of Ohio Rev. Code § 2903.11(A)(1).  Doc. 9, Exhibit 1.  The victim of the offenses charged in counts three and four was Jason A. Reihner, the bar owner. Doc. 9, Exhibit 1.  Counts one through four were all second degree felonies and each of the four counts included an RVO specification under Ohio Rev. Code § 2941.149.  Doc. 9, Exhibit 1.  Count five charged Krug with carrying a concealed weapon in violation of Ohio Rev. Code § 2923.12(A)(1), a fourth degree felony.  Doc. 9, Exhibit 1.  Krug pled not guilty to the indictment.  Doc. 9, Exhibit 2.

The State notified Krug of intent to use a certified copy of the entry of judgment of the prior conviction(s) as alleged in the specifications, as proof of the conviction(s).  Doc. 9, Exhibit 3.  Krug thereafter notified the State of his intent to object to the use of the entry of judgment of prior convictions.  Doc. 9, Exhibit 4.  Krug also filed a Motion in Limine to exclude any mention of his prior criminal record in the case in chief or for impeachment.  Doc. 9, Exhibit 5.  In his Motion in Limine, Krug offered to stipulate to the prior offense of carrying a concealed weapon

but requested that said prior offense be kept from the jury to avoid prejudice.  Doc. 9, Exhibit 5.

As to victim Jason Reihner, Krug filed proposed jury instructions regarding the lesser included

offense of aggravated assault.  Doc. 9, Exhibit 6.  As to victim Harold Layne, Krug filed

proposed jury instructions regarding the lesser included offense of assault.  Doc. 9, Exhibit 6.

On April 28, 2008, a jury found Krug guilty of all five counts in the indictment.  Doc. 9,

Exhibit 7.  On April 29, 2008, the trial court conducted an RVO hearing pursuant to Ohio Rev.

Code § 2941.149.  Doc. 9, Exhibit 8.  In its May 6, 2008, judgment entry, the trial court

concluded that the State and Krug had stipulated to Krug's prior convictions as alleged in the

RVO specifications in counts one through four and determined that, pursuant to Ohio Rev. Code

§§ 2941.149, 2929.14(D)(2)(a) and 2929.14(D)(2)(b), Krug was a Repeat Violent Offender as

defined in Ohio Rev. Code §§ 2941.149 and 2929.01.  Doc. 9, Exhibit 8; Doc. 9, Vol. 18,

Sentencing Tr. p. 4-5.  Krug was sentenced to eight years on each of the four felonious assault

counts but the trial court merged count one into count two and count three into count four.  Doc.

9, Exhibit 8.  Krug was sentenced to eighteen months on count five.  Doc. 9, Exhibit 8.  Counts

two and four ran consecutive to each other and to count five, for a total of seventeen years and

six months.  Doc. 9, Exhibit 8.  The trial court also sentenced Krug to consecutive ten year

sentences for each of the RVO specifications in counts two and four.  Doc. 9, Exhibit 8.  The

total sentence for all counts including the RVO specifications was for thirty-seven years and six

months.  Doc. 9, Exhibit 8.

**B.  Direct Appeal**

On May 28, 2008, Krug, through counsel, filed an appeal to the Eleventh District Court

of Appeals.  Doc. 9, Exhibit 9.  Krug asserted the following assignments of error:

> **FIRST ASSIGNMENT OF ERROR**:  The Trial Court erred when it restricted
> the defense from presenting evidence regarding the victim's habit of and

reputation for ejecting bar patrons in a violent manner in violation of the defendant-appellant's rights to due process and fair trial to present and confront witnesses as guaranteed under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**SECOND ASSIGNMENT OF ERROR**: The Trial Court erred when it refused to submit the defendant-appellant's proposed jury instructions on aggravated assault and assault in violation of the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

**THIRD ASSIGNMENT OF ERROR**: The Trial Court erred when it refused to submit defendant-appellant's proposed jury instruction on accident in violation of the defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

**FOURTH ASSIGNMENT OF ERROR**: The Trial Court erred to the prejudice of defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

**FIFTH ASSIGNMENT OF ERROR**:  The Trial Court erred by imposing consecutive prison terms under the repeat violent offender specifications in violation of the defendant-appellant's rights to due process and trial by jury and against double jeopardy as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Section 10, Article I of the Ohio Constitution.

Doc. 9, Exhibit 10.  On February 17, 2009, the State filed a responsive brief.  Doc. 9, Exhibit 11.

Krug's Motion to supplement his brief with new case law, *Oregon v. Ice.*, 129 S. Ct. 711 (2009)

(Doc. 9, Exhibit 12) was granted. Doc. 9, Exhibit 13.  On August 3, 2009, the Eleventh District

Court of Appeals affirmed the judgment of the Lake County Court of Common Pleas.  Doc. 9,

Exhibit 14.

On September 14, 2009, Krug, *pro se*, filed a Notice of Appeal with the Ohio Supreme

Court (Doc. 9, Exhibit 15) and a Memorandum in Support of Jurisdiction. Doc. 9, Exhibit 16.

Krug raised the following propositions of law:

**PROPOSITION OF LAW NO. I**:  The trial court erred when it refused to submit the defendant-appellant's proposed jury instructions of inferior degree in

violation of defendant-appellant's rights to due process and fair trial by jury as Guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 10 and 16, Article I of the Ohio Constitution.

**PROPOSITION OF LAW NO. II**: The trial court erred to the prejudice of defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

**PROPOSITION OF LAW NO. III**: The trial court erred by imposing consecutive prison terms under the repeat violent offender specifications in violation of defendant-appellant's rights to due process and trial by the jury and against double jeopardy as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.

Doc. 9, Exhibit 16.  The State filed a memorandum in response.  Doc. 9, Exhibit 17.  On December 30, 2009, the Ohio Supreme Court denied leave to appeal and dismissed Krug's appeal as not involving any substantial constitutional question.  Doc. 9, Exhibit 18, Case No. 2009-1655.  On January 11, 2010, Krug filed a Motion for Reconsideration with the Ohio Supreme Court arguing that he was not subject to an RVO specification under *State v. Hunter,* 123 Ohio St.3d 164 (2009), and sought to supplement the record with copies of his prior record.  Doc. 9, Exhibit 19.   The State opposed the Motion for Reconsideration as well as Krug's request to supplement the record.  Doc. 9, Exhibit 20.  On March 3, 2010, the Ohio Supreme Court denied Krug's motion for reconsideration and his motion for transmittal of supplementation of the record on appeal.  Doc. 9, Exhibit 21.

### C.  Petition to Vacate or Set Aside Judgment of Conviction or Sentence

On January 27, 2009, Krug, *pro se*, filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence.  Doc. 9, Exhibit 22.  Krug asserted two grounds for relief: (1) he was denied the right to a fair and impartial jury because of "unlawful pretrial publicity,[4]" and (2) defense counsel "failed to obtain statements or fully investigate witnesses."  Doc. 9, Exhibit 22.

---

[4] Contained within his argument regarding pretrial publicity, Krug asserted that one of the jurors who decided his case had served on a grand jury during the summer that he was indicted on other charges.  Doc. 9, Exhibit 22; Doc. 9, Exhibit 23.

The state filed a memorandum in response.  Doc. 9, Exhibit 23.   On February 23, 2009, the Lake County court dismissed Krug's Petition for Post Conviction Relief, and also denied Krug's request for appointment of counsel and expert assistance.  Doc. 9, Exhibit 24.  The Lake County court's denial was based on a merits review as well as on a determination that the issues raised could have been raised on direct appeal and therefore were barred by *res judicata*.  Doc. 9, Exhibit 24.

In March, 2009, Krug, *pro se*, appealed the trial court's decision to the Eleventh District Court of Appeals.  Doc. 9, Exhibit 25; Doc. 9, Exhibit 26.  Krug sought leave to add additional claims and requested expert assistance, i.e., an investigator to investigate toxicology reports and witnesses statements.  He asserted the following as his assignments of error:

**FIRST ARGUMENT:** Ineffective assistance of trial counsel when he failed to ensure a fair and impartial jury trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**Issue Presented**: Trial counsel was ineffective when he failed to address the Detective's slanderous article.

**SECOND ARGUMENT:** Ineffective assistance of trial counsel when he failed to conduct a reasonable investigation to make informed decisions about who's testimony to proffer at trial in violation of the defendant-petitioners rights to due process, a fair trial, and to present witnesses as guaranteed under the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**First Issue Presented**: Trial counsel was ineffective when he failed to interview critical alibi eyewitnesses prior to trial and in a rash decision decided against having them testify.

**Second Issue Presented**: Trial counsel was ineffective when he failed to investigate strength of witnesses because weaker witness was called to testify instead of witness with "powerful support" for defense.

**THIRD ARGUMENT:** Ineffective assistance of trial counsel when he failed to obtain evidence to proffer at trial in violation of the defendant-petitioners rights to

due process and a fair trial as guaranteed under the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**Issue Presented**: Trial counsel was ineffective when he failed to obtain the bar owners "Jason Reihner" toxicology results.

**FOURTH ARGUMENT:** Ineffective assistance of trial counsel when he failed to consult an expert to determine depth and angle of contraversial injuries in violation of the defendant-petitioners rights to due process, a fair trial, and present witnesses as guaranteed under the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**First Issue Presented**: Trial counsel was ineffective when he failed to consult a forensic doctor to firmly establish depth of controversial injuries.

**Second Issue Presented**: Trial counsel was ineffective when he failed to consult a forensic doctor to firmly establish angle of controversial injuries.

Doc. 9, Exhibit 25; Doc. 9, Exhibit 26.  On June 3, 2009, the appellate court denied Krug's motion to add additional claims and for the appointment of an investigator.  Doc. 9, Exhibit 27. In its denial, the appellate court indicated that its role was "limited to reviewing the proceedings before the trial court" and therefore the appellate court did not have the authority to grant the request to amend the petition for postconviction relief or provide funds for the hiring of an investigator.  Doc. 9, Exhibit 27.   On June 29, 2009, the State filed its brief in response to Krug's appeal.  Doc. 9, Exhibit 28.

On July 29, 2009, Krug filed a Motion for Leave to Remand Petitioners Pro-Se Petition Back to Trial Court.  Doc. 9, Exhibit 29.  Krug asserted that his reason for failing to initially include certain claims was because the public defender declined to handle his case and failed to timely return documents. Doc. 9, Exhibit 29.  On October 1, 2009, the Eleventh District Court of Appeals overruled Krug's motion for leave to remand.  Doc. 9, Exhibit 30.   In so doing, the Eleventh District Court of Appeals stated that "[i]t is inappropriate for this court to remand an

appeal merely to allow the appellant to raise additional issues for appeal."[5]  Doc. 9, Exhibit 30.

On November 27, 2009, the Eleventh District Court of Appeals affirmed the trial court's denial

of Krug's postconviction petition.  Doc. 9, Exhibit 31.

Krug did not appeal the November 27, 2009 Ohio Court of Appeals' decision affirming

the trial court's denial of postconviction relief.  However, on November 12, 2009, Krug, *pro se*,

appealed to the Supreme Court of Ohio the October 1, 2009 decision denying him leave to

remand.  He raised the following proposition of law in his memorandum in support of

jurisdiction:

> Appellate counsel[6] hindered petitioners opportunity to fairly present his claim by
> reneging on representation with an erroneous evaluation, while retaining
> evidentiary material in violation of the Fifth, Sixth and Fourteenth Amendment of
> the United States Constitution and Section 10, Article I of the Ohio Constitution.

Doc. 9, Exhibits 32 and 33.  The State filed a memorandum in response. Doc. 9, Exhibit 34. On

February 10, 2010, the Supreme Court of Ohio denied Krug leave to appeal. Doc. 9, Exhibit 35,

Case No. 2009-2071.

On December 11, 2009, Krug, *pro se*, filed a Civ. R. 60(B) Relief from Judgment Order

of *pro se* Postconviction Petition in the trial court, requesting that he be relieved from the court's

February 23, 2009 judgment denying postconviction relief and be allowed to amend his petition

to include additional claims. Doc. 9, Exhibit 36.  Krug raised the following "proposition of law:"

> **PROPOSITION OF LAW**: Appellate counsel hindered petitioners opportunity to
> fairly present his claims by reneging on representation with an erroneous
> evaluation, while retaining evidentiary material in violation of the Fifth, Sixth, and

---

[5] One judge dissented stating that she would "grant his motion and allow him to seek leave from the trial court to amend his petition."  Doc. 9, Exhibit 30 (Judge Mary Jane Trapp dissenting).

[6] Krug refers to Sarah Schregardus, Assistant State Public Defender as his appellate counsel. However, she was not his appellate counsel but, rather, was evaluating whether to pursue post-conviction remedies.  She ultimately declined to pursue postconviction remedies on Krug's behalf.  Doc. 9, Exhibit 36.

Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

Doc. 9, Exhibit 36.  On December 17, 2009, the State filed its brief in opposition to Krug's 60(B) motion. Doc. 9, Exhibit 37.  After determining that Krug's 60(B) motion was actually "a motion to vacate the court's journal entry of February 23, 2009 and a Crim R. 35 request for leave to amend his January 27, 2009 petition," the trial court, on January 7, 2010, denied the motion. Doc. 9, Exhibit 38.  The trial court disagreed with Krug's claim that the public defender "reneged" on representing him, explaining that the public defender's decision to decline representation was within her discretion under state law.  Doc. 9, Exhibit 38.  Moreover, the court found petitioner's additional claims barred by the doctrine of *res judicata* because the issues could have been raised at trial or on direct appeal. Doc. 9, Exhibit 38. Krug did not appeal the trial court's January 7, 2010, ruling.

### D.  Application to Reopen Appeal

On October 22, 2009, Krug, *pro se*, filed an Application for Reopening his appeal pursuant to Ohio App. R. 26(B).  Doc. 9, Exhibit 39.   Krug raised the following assignments of error:

> **FIRST ASSIGNMENT OF ERROR:** Appellant Counsel was ineffective for presenting "previously considered" direct appeal on an incorrect and incomplete record in violation of the Fifth, Sixth, and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

> **First Issue Presented**: Appellant counsel failed to correct detrimental errors in the record.

> **Second Issue Presented**: Appellant counsel presented deficient argument by neglecting testimony from the triers of fact that strongly supports the previously considered inferior instructions.

> **SECOND ASSIGNMENT OF ERROR:** Appellant Counsel Was Ineffective For Failing To Raise Ineffective Assistance Of Trial Counsel In Violation Of The Fifth, Sixth, And Fourteenth Amendment Of The Trial United States Constitution And Section 10, Article I Of The Ohio Constitution.

**First Issue Presented**: Trial Counsel failed to motion for a mistrial when the Trial Court threatened the jury pool with jail and deviated from established Ohio and Federal Procedure rendering voir dire partial.

**Second Issue Presented**: Trial Counsel failed to obtain bar owner Jason Reihner's toxicology results and neglected to confront Det. Doyle with relevant document.

**Third Issue Presented**: Trial Counsel failed to contact two alibi witnesses prior to trial and neglected to obtain a statement or proffer their critical testimony at trial.

**Fourth Issue Presented**: Trial Counsel failed to investigate the strength of witnesses because weaker witness was called to testify instead of witness with "powerful support" for defense.

**Fifth Issue Presented**: Trial Counsel failed to oppose the Trial Courts prejudicial announcement that Krug was in custody and wearing a leg restraint under his civilian clothing.

**Sixth Issue Presented**: Trial Counsel repeatedly failed to motion for a mistrial when the Trial Court neglected to explore the amount of prejudice the juror distractions caused.

Doc. 9, Exhibit 39.  On November 20, 2009, the State filed its Response in Opposition to Appellant's Pro Se Application for Reopening.  Doc. 9, Exhibit 40.  On December 16, 2009, Krug filed a Reply Brief.  Doc. 9, Exhibit 41.  In December 2009, the Eleventh District Court of Appeals denied Krug's request to reopen his appeal.  Doc. 9, Exhibit 42.

On January 22, 2010, Krug filed a Motion for Leave to Amend Appellant's Pro Se Application for Reopening based on the decision in *State v. Hunter*, 123 Ohio St.3d 164 (2009). Doc. 9, Exhibit 43.  Krug argued that, in light of *Hunter*, "his judicial record does not substantiate designating [him] a Repeat Violent Offender."  Doc. 9, Exhibit 43.  The State filed a response in opposition to Krug's Motion for Leave to Amend.  Doc. 9, Exhibit 44.  On March 22, 2010, the Eleventh District Court of Appeals overruled Krug's Motion for Leave to Amend.[7] Doc. 9, Exhibit 45.   On April 14, 2010, Krug, *pro se*, appealed the denial of his Motion for

---

[7] The Court of Appeals noted that Krug had submitted the same argument to the Supreme Court of Ohio in his January 11, 2010, Motion for Reconsideration (Doc. 9, Exhibit 19), and the Supreme Court of Ohio, on March 3, 2010, denied his Motion for Reconsideration.  Doc. 9, Exhibit 21; Doc. 9, Exhibit 45.

Leave to Amend.  Doc. 9, Exhibit 52.  Krug raised the following proposition of law in his

memorandum in support of jurisdiction:

> **PROPOSITION OF LAW**: Ineffective assistance of counsel for neglecting to distinguish prior judicial record from wrongly being designated a repeat violent offender in violation of the Fifth, Sixth, Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

Doc. 9, Exhibit 53.  Also, on April 14, 2010, Krug filed, in the Supreme Court of Ohio, a Motion

for Transmittal of Supplementation of the Record on Appeal in which he argued that the

indictment and sentencing entries from Lake County Court of Common Pleas, Case No. 94-CR-

000921 and 93-CR-000413 were necessary.  Doc. 9, Exhibit 54.   On May 7, 2010, the State filed

a Memorandum in Response.  Doc. 9, Exhibit 55.  On June 23, 2010, the Supreme Court of Ohio

denied Krug leave to appeal and denied Krug's motion for transmittal of supplemental record as

moot.  Doc. 9, Exhibit 56, Case No. 2010-0652.  On July 2, 2010, Krug moved for

reconsideration.  Doc. 9, Exhibit 57.  On July 9, 2010, the State filed a Response to the Motion

for Reconsideration.  Doc. 9, Exhibit 58.  On August 25, 2010, the Supreme Court of Ohio

denied Krug's Motion for Reconsideration.  Doc. 9, Exhibit 59.

On March 8, 2010, Krug filed a motion captioned "60(B) Relief from Judgment Entry

Date."  Doc. 9, Exhibit 46.  In the motion, Krug argued that he had not received notice of the

Eleventh District Court of Appeals' December 2009 entry denying his Application to reopen his

appeal pursuant to Ohio App. R. 26(B) until February 4, 2010.  Doc. 9, Exhibit 46.  On April 23,

2010, the Eleventh District Court of Appeals granted Krug's motion and instructed the clerk of

courts to refile the judgment entry denying Krug's application to reopen in order to allow Krug

the opportunity to submit a timely appeal to the Supreme Court of Ohio.  Doc. 9, Exhibit 47.

On May 14, 2010, Krug, *pro se*, appealed the decision to deny his application for reopening to the Supreme Court of Ohio.  Doc. 9, Exhibits 48 and 49.  Krug raised the following propositions of law in his memorandum in support of jurisdiction:

> **PROPOSITION OF LAW NO. I**: Appellant Counsel was ineffective for presenting "previously considered" direct appeal on an incorrect and incomplete record in violation of the Fifth, Sixth, Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.
>
> **First Issue Presented**: Appellant counsel failed to correct detrimental forensic errors in the record.
>
> **Second Issue Presented**: Appellant counsel presented a deficient argument by neglecting testimony from the triers of fact that strongly supports the previously considered inferior instructions.
>
> **PROPOSITION OF LAW NO. II**:  Appellant Counsel Was Ineffective For Failing To Raise Ineffective Assistance Of Trial Counsel In Violation Of The Fifth, Sixth, And Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.
>
> **First Issue Presented**: Trial Counsel failed to motion for a mistrial when the Trial Court threatened the jury pool with jail and deviated from established Ohio and Federal Procedure rendering voir dire partial.
>
> **Second Issue Presented**: Trial Counsel failed to obtain bar owner "victim's" toxicology results and neglected to confront Det. Doyle with relevant document.
>
> **Third Issue Presented**: Trial Counsel failed to contact two alibi eyewitnesses prior to trial and neglected to obtain a statement or proffer their critical testimony at trial.
>
> **Fourth Issue Presented**: Trial Counsel failed to investigate the strength of witnesses because weaker witness was called to testify instead of witness with "powerful support" for defense.
>
> **Fifth Issue Presented**: Trial Counsel failed to oppose the Trial Courts prejudicial announcement that Krug was in custody and wearing a leg restraint under his civilian clothing.
>
> **Sixth Issue Presented**: Trial Counsel repeatedly failed to motion for a mistrial when the Trial Court neglected to explore the amount of prejudice the juror distractions caused.

Doc. 9, Exhibits 48 and 49.  On June 8, 2010, the State filed a Memorandum in Response.  Doc. 9, Exhibit 50.  On July 21, 2010, the Supreme Court of Ohio dismissed Krug's appeal as not involving any substantial constitutional question.  Doc. 9, Exhibit 51.

### E.  Motion for Resentencing

On December 16, 2010, Krug filed a Motion for Resentencing with Allocution with the trial court asserting that he was wrongly designated an RVO and that the sentencing entry was inaccurate with respect to post-release control.  Doc. 9, Exhibit 60.  On January 11, 2011, the State responded.  Doc. 9, Exhibit 61.  The State conceded that the judgment entry did not accurately describe the post-release control period, but argued that the RVO designation was proper.  Doc. 9, Exhibit 61.  On January 13, 2011, the State moved for resentencing for the purpose of correcting the original sentencing judgment entry regarding post-release control.  Doc. 9, Exhibit 62.  On January 31, 2011, Krug filed a Response to State's Reply and Motion for Resentencing.  Doc. 9, Exhibit 63.  On February 1, 2011, the State filed a Response to Defendant's Response to State's Reply and Motion for Resentencing.  Doc. 9, Exhibit 64.  Petitioner states in his Traverse that, on May 3, 2011, the Lake County trial court denied his request.  Doc. 14, p. 12.

### F.  Federal Habeas Corpus

On January 12, 2011, Krug, *pro se*, filed his petition for writ of habeas corpus.  Doc. 1. In his petition, Krug asserts the following ten grounds for relief:

> **GROUND ONE:**  Counsel was ineffective for failing to distinguish defendant's prior record from wrongly being designated a repeat violent offender in violation of the fifth, Sixth and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.
>
> **GROUND TWO:** Appellant counsel was ineffective for presenting "previously considered" direct appeal on an incorrect and incomplete record in violation of the

Fifth, Sixth and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**GROUND THREE:** Appellant counsel presented a deficient argument by neglecting testimony from the triers of fact that strongly supports the previously considered inferior instructions in violation of the Fifth, Sixth and Fourteenth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

**GROUND FOUR:** Appellant counsel was ineffective for failing to raise ineffective assistance of Trial Counsel that failed to motion for a mistrial when the Trial Court rendering voir dire partial In Violation Of The Fifth, Sixth And Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**GROUND FIVE:** Appellant counsel was ineffective for failing to raise ineffective assistance of Trial Counsel that failed to obtain the toxicology results In Violation Of The Fifth, Sixth, and Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**GROUND SIX:** Appellant Counsel was ineffective for failing to raise Ineffective Assistance of Trial Counsel, that failed to contact two alibi eyewitnesses prior to trial and neglected to obtain a statement or proffer their critical testimony at trial in Violation Of The Fifth, Sixth and Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**GROUND SEVEN:** Appellant Counsel was ineffective for failing to raise ineffective assistance of Trial Counsel, that failed to investigate the strength of witnesses because weaker witness was called to testify instead of witness with "powerful support" for defense In Violation Of The Fifth, Sixth, And Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**GROUND EIGHT:** Appellant Counsel was ineffective for failing to raise ineffective assistance of Trial Counsel, that neglected to oppose the Trial Court's premeditated intentions to notify the jury that Appellant was in custody and wearing a leg restraint In Violation Of The Fifth, Sixth, and Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**GROUND NINE:** Appellant counsel was ineffective for failing to raise ineffective assistance of Trial Counsel, that neglected to explore the amount of prejudice the juror distractions caused In Violation Of The Fifth, Sixth, and Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

**GROUND TEN:**  Trial counsel was ineffective for failed to ensure a fair and impartial jury trial due to slanderous pretrial publicity In Violation Of The Fifth, Sixth, and Fourteenth Amendment Of The United States Constitution And Section 10, Article I Of The Ohio Constitution.

Doc. 1.  On March 13, 2011, Krug filed a Motion for discovery.  Doc. 6.  On March 29, 2011, Respondent opposed the Motion for discovery (Doc. 7) and, on April 11, 2011, Krug filed a Reply thereto.  Doc. 8.  On May 16, 2011, U.S. Magistrate Judge Greg White denied the Motion for discovery.  Doc. 12.   On May 24, 2011, Krug filed Objections to the Magistrate's Order.  Doc. 13.  On September 12, 2011, Krug filed a Motion for evidentiary hearing.  Doc. 15.  On September 13, 2011, the Court issued a Memorandum Opinion and Order rejecting Krug's Objections and affirming the Magistrate's Order denying the Motion for discovery, and denying Krug's Motion for an evidentiary hearing.  Doc. 16.

On April 28, 2011, Krug filed a document captioned "Expansion of Record."  Doc. 11.  This filing is referred to by Krug in his Motion for an evidentiary hearing as a Motion to Expand the record.  Doc. 15.   As noted above, the Court, on September 13, 2011, considered and denied Krug's Motion for an evidentiary hearing.  Doc. 15, Doc. 16.  Since Krug's April 28, 2011, "Expansion of Record" was referred to by Krug in his Motion for evidentiary hearing and considered as part of that Motion, Krug's request to expand the record is **DENIED** as moot.

On April 11, 2011, Respondent filed his Answer/Return of Writ.  Doc. 9.  On June 7, 2011, Krug filed his Reply/Traverse.  Doc. 14.   On October 27, 2011, Krug filed a "Rule 15(d) supplemental pleading to Traverse" requesting leave to supplement Ground One of his Traverse "with enacted house bill 86 (H.B. 86)."  Doc. 17.   Krug's request (Doc. 17) is **DENIED**.

### III. Procedural Barriers to Review

Respondent argues that a procedural default prevents review of Krug's first and tenth grounds for relief.  A petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381, 121 S.Ct. 1578 (2001).

A federal court may not grant a writ of habeas corpus unless the applicant has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

It is well settled that, in order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *Fulcher*, 444 F.3d at 798; *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and

not merely as issues arising under state law.  *See, e.g., Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  The Sixth Circuit noted four actions a defendant can take in presenting a claim to the state courts that are significant to a habeas court's determination whether the defendant presented the claim in such a way as to alert the state courts to its federal nature: (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans,* 228 F.3d at 681.

In situations in which a petitioner has failed to fairly present federal claims to the state courts and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted.  *Martin v. Mitchell,* 280 F.3d 594, 603 (6th Cir. 2002). In such situations, while the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the petitioner's failure to have the federal claims considered in the state courts results in a procedural default of those claims that bars federal court review.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006).  To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or show that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

When determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule, the following four factors are to be analyzed: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner

failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

## A.  Ground Ten[8]

In his tenth ground for relief, Krug argues that trial counsel was ineffective for failure to ensure a fair and impartial trial due to slanderous pretrial publicity.  Doc. 1, p. 21-22. Respondent argues, and this Court agrees, that Krug has procedurally defaulted his tenth ground for relief.  Krug first raised this claim in his post-conviction petition.  Doc. 9, Exhibit 22.  The trial and appellate courts determined that the issue was barred by *res judicata* because it could have been raised on direct appeal but was not and because the documents supporting the claim were available at the time of trial or direct appeal.  Doc. 9, Exhibit 24; Doc. 9, Exhibit 31.  Krug did not appeal the Ohio Court of Appeals' November 27, 2009, decision affirming the trial court's decision that this claim, now asserted as Krug's tenth ground for relief, was barred by *res judicata*.  Inasmuch as Krug failed to present his constitutional claim for relief to the state's highest court, he has not met the fair presentation requirement.  *See O'Sullivan,* 526 U.S. at 845; *Hafley,* 902 F.2d at 483.

While not entirely clear, it appears that Krug argues, as cause for his procedural default, that the public defender declined to provide representation for him in his post-conviction proceedings, an argument he made in connection with seeking leave to remand his post-conviction petition.  Doc. 14, p. 27-28.  Additionally, Krug argues that it would be a

---

[8] Although, as explained below, Ground One may be procedurally defaulted, it has been reviewed on the merits and the merits analysis is presented below.

fundamental miscarriage of justice if procedural default prevented this Court from reviewing his ineffective assistance of counsel pre-trial publicity claim because Krug was plagued by procedural obstacles.  Doc. 14, p. 28.[9]  Krug's arguments do not demonstrate cause for his failure to raise his "pre-trial publicity" claim in his direct appeal or for not appealing the Ohio Court of Appeals November 27, 2009,[10] decision to the state's highest court.  The decision by the public defender not to represent Krug for his post-conviction proceedings did not relate to his direct appeal or his failure to file an appeal of the November 27, 2009, Ohio Court of Appeals' decision.

Krug cannot overcome the procedural bar to his tenth ground for relief.  He has failed to show cause for the default and he has also failed to show actual prejudice that resulted from the alleged violation of federal law, or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.  Accordingly, Krug's tenth ground for relief is procedurally defaulted and should be denied.

### IV. Merits Review

### A.  Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Krug's habeas petition because he filed it after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

---

[9] Krug specifically argues that he was "forced to correct another procedural hurdle after the Ohio, Clerk of Court wrongly issued my App. R. 26(B) notice to ex-appellant counsel instead of me [Krug] the *pro se* litigant," Doc. 14, p. 28.  This example is entirely unrelated to the claim at issue, and as the record reflects, this issue was rectified and Krug was not barred from appealing the App. R. 26(B) decision. Doc. 9, Exhibits 47-49.

[10] The November 27, 2009, decision affirmed the trial court's denial of Krug's post-conviction petition which included his "pre-trial publicity" claim.  Doc. 9, Exhibit 31.

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).  A state court's adjudication only results in an "unreasonable application" of clearly established federal law when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, ___ U.S.___, 132 S.Ct. 26, 27,  181 L.Ed.2d 328 (Nov. 7, 2011) (quoting *Harrington v. Richter*, 562 U.S. ___, ___ 131 S.Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Richter*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit

26

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster,* ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).  Krug has not met his burden in this case.

### B.  Ineffective Assistance of Counsel

Each of Krug's ten grounds for relief involves a claim of ineffective assistance of counsel. The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. Amend. VI.  A defendant has a Sixth Amendment right not just to counsel but to "reasonably effective assistance" of counsel.  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To establish that his attorney was constitutionally ineffective, Krug must demonstrate that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.  Under the first prong of the *Strickland* test, a petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* at 689.  To satisfy the second, "prejudice," prong of the *Strickland* test, a petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the

outcome of the trial would have been different.  *Id.* at 694.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990) (quoting *Strickland,* 466 U.S. at 691).

In this case, the Ohio Court of Appeals, in ruling on Krug's App. R. 26(B) Application, reviewed the same ineffective assistance of appellate counsel claims that are the bases for Grounds Two through Nine of Krug's habeas petition.  A federal habeas court must give deference to the state court's adjudication of the merits.  *Perkins v. McKee*, 411 Fed. App'x. 822, 828 (6th Cir. 2011).  The Supreme Court recently emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter,* 131 S. Ct. at 786-88.

The *Strickland* test applies to appellate counsel.  *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

"'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Jones v. Barnes,*

463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)).  Counsel's failure to raise an

issue on appeal cannot be ineffective assistance unless there is a reasonable probability that

inclusion of the issue would have changed the result of the appeal.  *McFarland*, 356 F.3d at 699.

Further, counsel cannot be ineffective for a failure to raise an issue that lacks merit.  *Willis v.

Smith*, 351 F.3d 741, 745 (6th Cir. 2003).  Relevant considerations in analyzing performance of

appellate counsel include whether the omitted issues were significant and obvious and whether

the omitted issues were clearly stronger that those presented.  *Mapes v. Coyle*, 171 F.3d 408,

426-427 (6th Cir. 1999).

### C.  Ground One

In his first ground for relief, Krug argues that counsel was ineffective for failing to

distinguish his prior record from that required for designation as a repeat violent offender

("RVO").  Doc. 1, p. 7-9.  He argues that his prior convictions for aggravated burglary and

felonious assault, which his counsel stipulated to at trial (Doc. 9, Exhibit 8; Doc. 9, Vol. 18,

Sentencing Tr. p. 4-5), did not qualify him as an RVO because they did not involve serious

physical harm or a prison term.

It is unclear whether Krug rests his first ground for relief on a claim that trial counsel was

ineffective or that appellate counsel was ineffective.  Doc. 1, p. 7-9.  Unlike his other nine

grounds for relief, which specifically identify either trial or appellate counsel, Krug generically

refers to "Counsel" in his first ground for relief.  However, in his Traverse, Krug adds the word

"Appellant" so as to have Ground One read "Appellant counsel was ineffective . . ."  Doc. 14,

Page 9.  While pleadings of *pro se* prisoners are liberally construed, *see Haines v. Kerner,* 404

U.S. 519, 595-96, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), a court is not required to address a

theory of relief asserted only in a traverse but not in the habeas petition.  *See Tyler v. Mitchell,*

416 F.3d 500, 504 (6th Cir. 2005); *Jalowiec v. Bradshaw*, 657 F.3d 293, 311-312 (6th Cir. 2011). While this Court could refrain from addressing the theory of relief asserted in Krug's Traverse, i.e., ineffective assistance of *appellate* counsel, the undersigned will address both a claim for ineffective assistance of trial counsel and a claim for ineffective assistance of appellate counsel in order to ensure a full review of Krug's Petition.

Krug has procedurally defaulted any claim that his trial counsel was ineffective for failing to distinguish his prior record from that required for designation as a repeat violent offender.  *See* 28 U.S.C. § 2254(b), (c); *Harless*, 459 U.S. at 6; *Picard*, 404 U.S. at 275–76. Krug did not raise ineffective assistance of trial counsel on his direct appeal.  Krug does not dispute this fact, nor does he argue cause for the procedural default.  Accordingly, to the extent the Krug's first ground for relief asserts a claim for ineffective assistance of trial counsel for failure to distinguish his prior judicial record from that required for designation as an RVO, that claim is procedurally defaulted and therefore should be denied. Even if not procedurally defaulted, Krug's claim is without merit for the reasons set forth below.

To the extent that Krug has asserted, as an independent ground for relief, ineffective assistance of appellate counsel for failure to distinguish his prior judicial record, Krug also may have procedurally defaulted that claim. *Id..*  Krug attempted to assert that claim in state court through a motion for leave to amend his App. R. 26(B) application to reopen his appeal *after* the Ohio Court of Appeals denied his Application, as well as through a motion for reconsideration with the Ohio Supreme Court.  Doc. 9, Exhibit 43. 57.  Both motions were denied.  Doc. 9, Exhibits 45, 59.  It is unclear, however, whether the denials were based on a procedural rule. Since the "doctrines of exhaustion and procedural default raise only federal-state comity concerns and are not a jurisdiction[al] limitation o[n] the power of the court," *Linscott v. Rose,*

436 F.3d 587, 592 (6ᵗʰ Cir. 2006), the Court need not determine whether there was a procedural default and therefore will review the claim on the merits.

Krug's argument is based on *State v. Hunter,* 123 Ohio St.3d 164, which was decided on August 25, 2009,[11] and his argument that "former (DD) is the relevant [RVO] statute."  Doc. 14, p. 9-12.   The incident leading to defendant Hunter's indictment and ultimate conviction occurred in 2004 and Hunter was tried in 2006.  *Hunter*, 123 Ohio St.3d at 165.  Hunter argued that the Ohio Supreme Court, in *State v. Foster*, 109 Ohio St.3d 1, (2006), eliminated the RVO specification in O.R.C. 2929.01(DD) in its entirety and therefore he was improperly designated an RVO.  *Hunter*, 123 Ohio St.3d at 166.  The Ohio Supreme Court rejected Hunter's argument and determined that "the repeat violent offender specification as defined in former R.C. 2929.01(DD)"[12] was not eliminated in *State v. Foster*, 109 Ohio St.3d 1 (2006).  *Hunter*, 123 Ohio St.3d at 169.

Krug asserts that he was indicted on February 18, 2008, prior to the April 7, 2009, effective date of 2008 Am.Sub.H.B. No. 130.  Doc. 14, p. 10-12.  He argues that the version of the RVO statute that applies to his case is the version reviewed in *Hunter,* which included a requirement that a defendant served or was serving a prison term for an offense involving a first or second degree felony that resulted in death or serious physical harm.  Doc. 14, p.  10-12.

Krug's reliance on *Hunter* is misplaced.  Although he is correct that the version of the RVO statute that *Hunter* reviewed did require that the defendant served or was serving a prison term for an offense involving a first or second degree felony that resulted in death or serious physical harm (*Hunter*, 123 Ohio St.3d at 167), he is incorrect in assuming that the same

---

[11] The Ohio Supreme Court decided *Hunter* before Krug filed his notice of appeal to initiate his direct appeal (Doc. 9, Exhibit 15) and also before he filed his App. R. 26(B) application to reopen his appeal.  Doc. 9, Exhibit 39.

[12] The Ohio Supreme Court noted that the former version of R.C. 2929.01(DD) that was at issue because it was the version in effect when Hunter was indicted had been amended and later redesignated as subsection (CC) of R.C. 2929.01.  *Hunter*, 123 Ohio St.3d at 166, FN1, citing 2008 Am.Sub.H.B. No. 130 (effective April 7, 2009).

requirements were in effect when he was indicted.  The RVO statute was amended substantively in 2006 and the amendment removed those requirements. *See* Am.Sub.H.B. 95, eff. 8-3-06.  The version of the RVO  statute, O.R.C. § 2929.01(DD), that was in effect at the time of Krug's indictment in 2008 reflected the 2006 amendment, which deleted the prison term and serious physical harm requirements.  *See* Am.Sub.S.B. 10, eff. 1-1-08.  On April 7, 2009, after Krug's indictment and trial but before the Eleventh District Court of Appeals issued its opinion in Krug's direct appeal, the RVO statute was amended again. This time, the amendment was nonsubstantive:  it merely redesignated subsection (DD) of O.R.C. § 2929.01 as subsection (CC).[13]  The RVO requirements in redesignated subsection (CC) remained the same as they were when the statute was amended in 2006 and when Krug was indicted, i.e., the RVO statute did not require a prison term or serious physical harm.   *See* Am.Sub.H.B. 130, eff. 4-7-09; Am.Sub.S.B. 10, eff. 1-1-08; Am.Sub.H.B. 95, eff. 8-3-06.

Krug's ineffective assistance of counsel arguments under Ground One are based on the incorrect premise that the RVO statutory language in effect at the time of his indictment, designation and sentencing as an RVO was the same statutory language considered in *Hunter*. As shown above, Krug is wrong on that point.  Accordingly, Hunter does not support his argument and he cannot demonstrate that his appellate counsel was ineffective for failing to distinguish his prior record.

While Krug makes arguments as to why he should not have been designated an RVO, he has not demonstrated (1) that his appellate counsel made such serious errors that he was not functioning as "counsel" guaranteed by the Sixth Amendment; or (2) that his appellate counsel's

---

[13] The intervening change in the lettering of the RVO statutory subsection explains why the Ohio Court of Appeals referred to O.R.C. §2929.01(CC) in its August 3, 2009, decision.  The RVO statutory language interpreted by the Ohio Court of Appeals was the same language in effect at the time of Krug's indictment in what was then subsection (DD).  Accordingly, Krug cannot demonstrate prejudice by reason of the Ohio appellate court's reference to O.R.C. §2929.01(CC).

allegedly deficient performance prejudiced the defense.  *Strickland,* 466 U.S. 668 at 687.   The prior convictions were stipulated to by the defense.  Doc. 9, Exhibit 8.  Appellate counsel raised six different issues on appeal challenging the RVO specification.  Doc. 9, Exhibit 10, p. 33-44. On Krug's direct appeal, the Ohio Court of Appeals reviewed the sentencing, including the RVO designation, and determined that the trial court properly sentenced Krug as a repeat violent offender.  Doc. 9, Exhibit 14, p. 34-36.  The Ohio Court of Appeals determined that, under O.R.C. § 2901.01(A)(9), an "offense of violence" includes the offense of felonious assault and aggravated burglary of which Krug was previously convicted.  Doc. 9, Exhibit 14, p. 35. Accordingly, since the state court determined that Krug was properly sentenced and designated as a repeat violent offender, this court is bound by that decision when reviewing Krug's habeas petition.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (stating that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas review").

Appellate counsel's failure to raise an additional issue challenging the RVO specification, where the challenge would have been based on outdated and inapplicable statutory language, cannot be said to be objectively unreasonable under the circumstances. *Strickland,* 466 U.S. 668 at 687.  Moreover, Krug has failed to demonstrate that a "reasonable probability" exists that, but for his counsel failing to distinguish his prior judicial record, the outcome of the proceedings would have been different.  *Id.*

For the foregoing reasons, Krug's first ground for relief is procedurally defaulted and/or without merit and should be denied.

### D.  Grounds Two through Nine

In Grounds Two and Three of his Petition, Krug asserts that appellate counsel was ineffective for reasons other than failing to raise ineffective assistance of trial counsel.  Doc. 1, p. 9-12.  Specifically, Krug argues that his appellate counsel was ineffective for "presenting 'previously considered' direct appeal on an incorrect and incomplete record" (Ground One); and "neglecting testimony from the triers of fact that strongly supports the previously considered inferior instructions" (Ground Three).  Doc. 1, p. 9-12.

In Grounds Four through Nine, Krug asserts that his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel.  Doc. 1, p. 12-21.  Specifically, Krug argues in his Petition that his appellate counsel should have asserted claims that trial counsel was ineffective for: (1) failing to move for a mistrial during voir dire (Ground Four); (2) failing to obtain toxicology results of the bar owner victim (Ground Five); (3) failing to contact two alibi eyewitnesses prior to trial and neglecting to obtain statements from them or proffer their "critical testimony" (Ground Six); (4) failing to investigate the strength of witnesses because a "weaker witness was called to testify instead of a witness with 'powerful support' for defense" (Ground Seven); (5) neglecting to oppose the trial court's "premeditated intentions to notify the jury that Krug was in custody and wearing a leg restraint" (Ground Eight); and (6) neglecting "to explore the amount of prejudice the juror distractions caused" (Ground Nine).  Doc. 1, p. 12-21.  However, in his Traverse, Krug argues Grounds Four through Nine as asserting claims of ineffective assistance of <u>trial</u> counsel, rather than ineffective assistance of appellate counsel.  Doc. 14, p. 6-7, 17-25.  This Court is not required to address theories of relief asserted only in a petitioner's traverse but not in his habeas petition.  *See Tyler*, 416 F.3d at 504; *Jalowiec*, 657

F.3d at 311.  Even if this Court liberally construes Krug's *pro se* filings, *see Haines,* 404 U.S. at 595-96, to include separate claims within Grounds Four through Nine that <u>trial</u> counsel was ineffective, these separate claims would be procedurally defaulted because they were not raised in Krug's direct appeal.  Further, as more fully explained herein, Krug cannot demonstrate cause for this procedural default nor has he shown that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

Krug raised all of his ineffective assistance of appellate counsel arguments contained in Grounds Two through Nine in his Rule 26(B) application to reopen his direct appeal.  As correctly noted by the Ohio Court of Appeals, "an applicant seeking to reopen his appeal must first show a genuine issue as to whether he was deprived of effective assistance of appellate counsel[,]" and "[i]f the applicant can so demonstrate, the applicant must then show that the deficiency prejudiced the outcome of the initial appeal."  Doc. 9, Exhibit 42, p. 1-2; *See* App. R. 26(B); *see also State v. Spivey,* 84 Ohio St.3d 24, 25 (1998).

In addressing Krug's claims, the Ohio Court of Appeals correctly recognized that *Strickland* governs claims of ineffective assistance of appellate counsel and stated:

> This Court has stated that in order to prevail on a claim that the appellate counsel's assistance was ineffective, appellant must demonstrate that appellate counsel's performance was deficient and that he was prejudiced by this deficiency.  See *State v. Waites* (Dec. 20, 1996), 11th Dist. No. 93-L-009, 1996 Ohio App. LEXIS 5808, citing App.R. 26(B)(9) and *Strickland v. Washington* (1984), 466 U.S. 668.  See, also, *State v. Reed* (1996), 74 Ohio St.3d 534, 535 (the two prong analysis in *Strickland* is the appropriate standard to evaluate appellate counsel's effectiveness under App.R.26(B)).

> In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential.  The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient.  Therefore, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome

the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."' *State v. Abdul*, 8th Dist. No. 90789, 2009-Ohio-6300, ¶3, quoting *Strickland*.

Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions.  The court noted: 'Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central appeal, if possible, or at most on a few key issues.' *Abdul* at ¶4, quoting *Jones v. Barnes* (1983), 463 U.S. 745.

Indeed, including weaker arguments might lessen the impact of stronger ones.  Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impost on appellate counsel the duty to raise every 'colorable' issue.  Such rules would disserve the goal of vigorous and effective advocacy.  Id., citing *State v. Allen* (1996), 77 Ohio St.3d 172.  See, also, *State v. Gumm* (1995), 73 Ohio St.3d 413, *State v. Campbell* (1994), 69 Ohio St.3d 38.

Doc. 9, Exhibit 42, p. 2-3.

After reviewing Krug's claims of ineffective assistance of appellate counsel that were not based on appellate counsel's failure to assert claims of ineffective assistance of trial counsel,[14] as well as his six claims based on appellate counsel's failure to raise ineffective assistance of trial counsel,[15] the Ohio Court of Appeals determined that:

Mr. Krug's appellate counsel raised five assignments of error for our review on appeal.  Appellate counsel is not required to raise every single conceivable issue on appeal.  *Barnes* at 749-751.  Doing so does not serve the goal of effective appellate advocacy.  *Abdul* at ¶4.  Including weaker or meritless arguments dilute the impact of the stronger ones.  Appellate counsel has the professional duty to weed out claims unlikely to succeed to the best of his or her judgment and discretion.  Mr. Krug's appellate counsel did just that, wisely focusing on more promising claims instead of raising every conceivable issue.

Mr. Krug failed to show a genuine issue as to whether he was deprived of the effective assistance of appellate counsel, and certainly has not demonstrated any of the alleged deficiencies prejudiced the outcome of his appeal.

---

[14] These are the claims set forth in Krug's Grounds Two and Three.  Doc. 1, p. 9-12.

[15] These are the claims set forth in Krug's Grounds Four through Nine.  Doc. 1, p. 12-21

Doc. 9, Exhibit 42, p. 9.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential' and, when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, ––– U.S. –––, 131 S.Ct. 770, 788 (2011). Krug has failed to overcome these "highly deferential" standards. Here, there is no dispute that the Ohio Court of Appeals identified *Strickland* as the correct governing legal principle. Therefore, this Court must assess whether the Ohio Court of Appeals' decision unreasonably applied *Strickland*. § 2254(d)(1). *See Brown v. McKee*, 2012 WL 636107, *6 (quoting *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1399 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Harrington v. Richter*, ––– U.S. –––, 131 S.Ct. 770, 786 (2011)).

### i.  Ground Two

As his second ground for relief, Krug argues that his appellate counsel was ineffective because she did not point out two errors pertaining to the State's reference to an exhibit list and a blood stain marker, specifically an incorrect identification of exhibit 37G and an inaccurate reference to the blood stain marker # of victim Jason Reihner's blood stain marker.[16] While State's exhibit 37G should have been listed as containing a photograph of a knife sheath rather than blood stain marker #4 (Doc. 9, Exhibit 40, p. 2), the testimony elicited at trial accurately described State's exhibit 37G as a photograph of a knife sheath. Vol. 14, Tr. p. 822-823. Additionally, while the State's statement of facts in Krug's direct appeal incorrectly referenced blood stain marker #3 as belonging to victim Jason Reihner (Doc. 9, Exhibit 40, p. 3; Doc. 9, p.

---

[16] The State conceded these errors in its opposition to Krug's App. R. 26(B) motion. Doc. 9, Exhibit 40, p. 2-3.

31; Doc. 14, p. 13), the trial testimony correctly indicated that Jason Reihner's blood was found at blood stain marker #1.  Vol 13, Tr. 771, 778-779.

In reviewing this claim, the Ohio Court of Appeals found that "[t]hese minor errors in no way affect the integrity of the record on appeal."  Doc. 9, Exhibit 42, p. 4.  The Ohio Court of Appeals had the transcript of the trial court proceedings and Krug does not present any evidence that the appellate court was misled by these minor errors such that a "reasonable probability" exists that, but for his counsel's failure to file a reply brief pointing out the discrepancies, the outcome of the proceeding would have been different.  Krug argues that these errors may "imply and reflect that Ray [Layne] was injured prior to and not in the area where I [Krug] was cornered and being assaulted."  Doc. 1, p. 9.  The Ohio Court of Appeals' decision affirming Krug's conviction includes a discussion of Layne's stabbing that is based on a review of Layne's and Krug's testimony and a conclusion that the jury discredited Krug's claims of self-defense and accident.  Doc. 9, Exhibit 14, p. 28.  Krug does not articulate to this Court how the Ohio Court of Appeals' application of *Strickland* to the claims in his second ground for relief was unreasonable either factually or legally.  Upon review, this Court does not conclude that Krug's appellate counsel was ineffective for not failing to point out the two stated errors or that the Ohio Court of Appeals' application of *Strickland* was unreasonable or contrary to law.  Accordingly, Krug's second ground for relief should be denied.

### ii.  Ground Three

For his third ground for relief, Krug argues that his appellate counsel was ineffective for failing to point out that two jurors, when polled by the trial court, added to their statements affirming their concurrences in the verdict the words "according to the letter of the law" (Vol.

17, Tr. p. 1366-67), words that Krug contends support his proffered jury instruction on aggravated assault, an inferior degree of felonious assault.

In reaching its decision on this claim in Krug's App. R. 26(B) motion, the Ohio Court of Appeals indicated that it had already "explained that the trial court did not abuse it discretion in not giving a instruction on aggravated assault, because the evidence in this case does not warrant such an instruction and because an instruction on aggravated assault is incompatible with Mr. Krug's claim of self-defense."  Doc. 9, Exhibit 42, p. 4.  Further, the Ohio Court of Appeals stated that it failed "to see how the two jurors' statement 'according to the letter of the law' has any bearing on a proper resolution of this issue." Doc. 9, Exhibit 42, p. 4.

In support of this ground for relief, Krug asserts that "counsel's presentation fell below an objective standard of reasonableness by neglecting evidence that several fact finders were in conflict with the letter of the law they were allowed." Doc. 14, p. 15.  However, Krug fails to present any evidence that the jurors' verdicts were in conflict with the jury instructions that were provided and fails to demonstrate that the Ohio Court of Appeals' resolution of this claim was unreasonable or contrary to law.  Statements of a speculative nature, such as "several fact finders were in conflict with the letter of the law they were allowed," do not support a conclusion that appellate counsel was ineffective, especially against the backdrop of a direct appeal in which appellate counsel included the argument that the trial court abused its discretion in not giving a jury instruction on aggravated assault.[17]  Such speculative statements are insufficient to overcome the highly deferential standards created by *Strickland* and § 2254(d).  *See Richter*, 131 S.Ct. at 788.  Accordingly, Krug's third ground for relief is without merit and should be denied.

---

[17] Krug acknowledges that his appellate counsel did argue that the trial court abused its discretion in not giving an instruction on aggravated assault.  Doc. 14, p. 14.

### iii.    Ground Four

As his fourth ground for relief, Krug argues that appellate counsel was ineffective for not arguing that trial counsel was ineffective in failing to move for a mistrial during voir dire.  Doc. 1, p. 12.  More particularly, Krug states that trial counsel failed to move for a mistrial "when the judge threatened the jury pool with jail" and when alternate juror "'ex-police officer' George Luther who works in the local prosecutor's office gave a subtle unintelligible response when asked if he could remain impartial."  Doc. 1, p. 12.

In reviewing these claims, the Ohio Court of Appeals determined that a request for a mistrial was not warranted under the circumstances.  Doc. 9, Exhibit 42, p. 5.  Specifically, the Court of Appeals determined that:

> The portion of the transcript he [Krug] cites for this claim shows that the trial court admonished the jury after a potential juror made the following comment about Mr. Krug: "Looking at him, I think he's hot headed and he drinks.  Loses his cool."  Upon hearing the improper remark, the trial court stated: "I see jurors say something that is inappropriate in order to get them tossed off the jury.  And I don't know if anybody here has that inclination, but I toss somebody off the jury for saying something that is definitely over the line, uncalled for, and prejudicial, one of these uniformed guys will be taking you over to the jail."  Immediately after this comment, the transcript shows that the defense counsel asked a potential juror who had worked for the county whether he can be impartial and the transcript indicates his answer was "unintelligible."  Following the unintelligible answer, the defense counsel moved on to the next line of questions, asking the same juror "do you hunt at all?"

Doc. 9, Exhibit 42, p. 5.

The Ohio Court of Appeals found that the exchange and admonishment by the trial court would not have warranted a request for a mistrial.  Doc. 9, Exhibit 42, p. 5.  The court noted that mistrials are reserved for instances where the ends of justice so require and a fair trial is no longer possible.  Doc. 9, Exhibit 42, p. 5, quoting *State v. Franklin* (1991), 62 Ohio St.3d 118,

127 (internal quotations omitted).  Krug argues that trial counsel was ineffective in neglecting to oppose the trial court after it admonished the jury pool, i.e., "threatened the jury pool with jail," because the trial court's action cut off meaningful responses to critical questions.  Doc. 14, p. 17. However, the record reflects that Krug's trial counsel did take action to avoid such a result. Defense counsel, contemporaneously with the above described exchange and admonishment, and in the presence of the jury, requested that the trial court confirm, and the trial court did confirm, that the court did not "want any of these people [jurors] to hide their true feeling about things." Vol 1., Tr. p. 191. Accordingly, Krug's claimed reason as to why trial counsel was ineffective, i.e., that jurors might not provide meaningful responses to critical questions, is without merit. Further, Krug has failed to articulate a basis for a finding that the Ohio Court of Appeals' decision was a factually or legally unreasonable application of the law.

With regard to Krug's claim that trial counsel should have requested a mistrial because of an "unintelligible response" from alternate juror George Luther in response to a question regarding his ability to remain impartial, the Ohio Court of Appeals noted that, immediately after the "unintelligible" answer, counsel moved to a different line of questions about whether Luther was a hunter.  The Ohio Court of Appeals therefore concluded that it was highly unlikely that the juror had indicated an inability to be fair and impartial.  Doc. 9, Exhibit 42, p 5-6.  Since it can reasonably be inferred that Luther did in fact indicate he could be impartial, a motion for a mistrial would not have been appropriate.  Because the record supports the Ohio Court of Appeals' conclusion (Vol. 11, p. 270-71) and because Krug has failed to articulate a basis for a finding that the Court of Appeals' conclusion was factually or legally unreasonable, Krug's fourth ground for relief is without merit and should be denied.

### iv.    Ground Five

For his fifth ground for relief, Krug asserts that appellate counsel should have argued that trial counsel was deficient in failing to obtain the bar owner victim's toxicology report. Doc. 1, p. 13-14.   The Ohio Court of Appeals noted that, although the toxicology report was not obtained, the record reveals that the jury was in fact aware that the bar owner was intoxicated.  Upon defense counsel's cross-examination, the bar owner admitted to consuming alcohol prior to the incident.  Doc. 9, Exhibit 42, p. 6; Vol. 11, Tr. p. 397-398.  The bar owner also admitted to having been treated for alcohol withdrawal at the hospital on the night of the incident.  Vol. 11, Tr. p. 397-398.  Further, the record indicates that defense counsel had investigated the issue because he was familiar with the medical reports. Vol. 10, Tr. p.  32-26.

Based on these facts, it cannot be said appellate counsel's failure to assert as error trial counsel's failure to obtain the bar owner's toxicology report fell below an objective standard of reasonableness.  Also, inasmuch as the jury was aware of the bar owner's alcohol consumption prior to the incident, it cannot be said that a "reasonable probability" exists that, but for counsel's error, the outcome of the proceeding would have been different.  Accordingly, because Krug has not demonstrated that the Ohio Court of Appeals' decision was factually or legally unreasonable, Krug's fifth ground for relief is without merit and should be denied.

### v.    Grounds Six and Seven

As his sixth and seventh grounds for relief, Krug asserts that appellate counsel was ineffective for failing to assert that trial counsel was ineffective for decisions made and actions taken relative to potential witnesses, i.e., failing to contact two "alibi eyewitnesses" (Lindsey Anderson and Jacqueline Sophilka) prior to trial and neglecting to obtain their statements or

proffer their "critical testimony" and failing properly to investigate the strength of witnesses because a weaker witness (Jay Davis) was called to testify but an allegedly stronger witness (Sean McClain) was not called to testify.  Doc. 1, p. 15-17, Doc. 14, p. 20-23.

As stated by the Ohio Court of Appeals, "[t]he decision to call a witness is 'within the rubric of trial strategy and will not be second-guessed by a reviewing court.' *State v. Harco*, 11th Dist. No. 2005-A-0077, 2006-Ohio-3408, ¶37, quoting *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396."  Doc. 9, Exhibit 42, p. 6-7.  Although Krug claims McClain would have provided "powerful support" for the defense, the Ohio Court of Appeals noted that Krug did not demonstrate how McClain would have provided testimony more favorable to him than witnesses who were presented by his trial counsel.  Doc. 9, Exhibit 42, p. 6.  Additionally, in regard to two of the witnesses who were called by the defense, Ms. Cotton and Mr. Davis, the record reveals that Krug was involved in the decision-making process.   Vol. 17, Tr. p. 1278-1279.  Specifically, trial counsel stated: "[w]ell, Your Honor, both those witnesses added evidence in this case.  Mr. Krug felt it was helpful to put them on.  And we discussed that issue.  And even though they said some things that hurt him to some extent, they also said some things that benefited."  Vol. 17, Tr. p. 1278–1279.  Krug does not refute the State's statement that "Krug agreed with his counsel's strategy to call witnesses Cotton and Davis."  Doc. 9, p. 40.

Krug argues that McClain's "written statement conflicts with Ray's [Layne's] concocted story and lends "'powerful support' for my self-defense proposition."  Doc. 14, p. 23; Doc. 9, Exhibit 39, Appx. 9.  However, a review of McClain's statement demonstrates that it provided support for the prosecution's position that Krug was the aggressor in the fight.  Doc. 9, Exhibit 39, Appx. 9.   McClain stated that Jason [the bar owner victim] "was trying to push away as the guy [Krug] . . . was pulling him toward him."  Doc. 9, Exhibit 39, Appx. 9.  In light of the fact

that McClain's statement does in fact provide support for the prosecution's position that Krug was the aggressor in the fight, Krug cannot overcome the presumption that trial counsel's decision not to call McClain "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Krug relies on *Harris v. Reed*, 894 F.2d 871 (7th Cir. 1990), to argue that trial counsel's failure to call McClain after indicating that he was planning to do so constituted ineffective assistance of counsel.  However, in *Harris,* a Seventh Circuit case, trial counsel rested without calling any witnesses, including witnesses to support the defense's version of the incident that had been presented during opening statement.  Here, trial counsel did call witnesses to support Krug's version of the incident, i.e., self-defense.  In addition to *Harris* not being controlling precedent, the facts in Krug's case are not similar to the facts in *Harris.*  Accordingly, Krug's reliance on *Harris* is not dispositive nor is it even persuasive.

With regard to Krug's claim that his trial counsel failed to investigate "two alibi eyewitnesses" prior to trial, the record demonstrates that defense counsel had difficulty locating those witnesses.  Vol.  15,Tr. p. 974-992, 1024-25.  The record also demonstrates that, after locating and disclosing Anderson and Sophilka as potential witnesses, defense counsel spoke with those witnesses via telephone and subpoenaed them to testify at trial.  Vol.  15,Tr. p. 974-992, 1024-25.  Trial counsel subsequently made a decision not to call the two witnesses after the prosecution disclosed to defense counsel that the two witnesses had "impeachable convictions" and after a member of defense counsel's staff listened to a tape recorded interview of the two witnesses that was conducted by the prosecutor's office.  Vol.  15,Tr. p. 974-992, 1024-25. While there were some limitations on defense counsel's investigation of the two potential "alibi witnesses" because of difficulties in locating them, Krug cannot demonstrate that trial counsel

did not contact the two witnesses.  Based on the record, Krug has not overcome the presumption

that, once the two witnesses were located, trial counsel's decision not to call them "might be

considered sound trial strategy."  *Strickland*, 466 U.S. at 689.

Krug has failed to demonstrate how trial counsel's decisions and action taken regarding

potential witnesses was objectively unreasonable or prejudicial or how appellate counsel's

decision not to raise as error trial counsel's decisions and action taken relative to potential

witnesses was objectively unreasonable or prejudicial.  Furthermore, Krug has not demonstrated

that the Ohio Court of Appeals' decision was factually or legally unreasonable.  Accordingly,

Krug's sixth and seventh grounds for relief are without merit and should be denied.

### vi.    Ground Eight

As his eighth ground for relief, Krug claims that appellate counsel was ineffective for

failing to raise as error trial counsel's failure to oppose the trial court's decision to notify the jury

that Krug was in custody because he could not post a bond and was limping due to a leg restraint.

Doc. 1, p. 18-19.  In its review of this claim, the Ohio Court of Appeals stated:

> Mr. Krug claims the consent reflects ineffective assistance, citing *Deck v. Missouri* (2005), 544 U.S. 622.  In that case, the defendant was "shackled with leg irons, handcuffs, and a belly chain" at his sentencing hearing.  The court held that "the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their use during the guilt phase, unless that use is 'justified by an essential state interest' – such as the interest in courtroom security – specific to the defendant on trial."  Id. at 623.  The court explained that "[t]he law has long forbidden routine use of visible shackles during the guilt phase and it permits a State to shackle a criminal defendant only in the presence of special need."  Id. at 626.  We recognize that visible shackling undermines the presumption of innocence and affronts the dignity of judicial proceedings.  Here, however, Mr. Krug was not "visibly shackled."  The leg restraint was placed discreetly under the defendant's clothing and the trial court's disclosure to the jury was necessary because of legitimate concerns that the jury may draw improper inferences from his limp.  Therefore, his trial counsel cannot be faulted for not objecting to the disclosure and his appellate counsel cannot be required to claim ineffective assistance of counsel in this regard.

Doc. 9, Exhibit 42, p. 7-8.  The Ohio Court of Appeals found Krug's case distinguishable from the facts addressed by the U.S. Supreme Court in *Deck*.  As reflected in the record, trial counsel did not object because it was his understanding that the jury knew that Krug was in custody since officers were present.  Vol. 15, p. 973-974.  The trial court indicated it wanted to protect against any improper inferences the jurors might draw from the fact that Krug had a slight limp, e.g., "[w]ell, he must be disabled, how could he carry out, you know, what is alleged to have been carried out." Vol. 15, p. 973-974. When the trial judge advised the jury of the leg "restraint," he referred to it as a leg "brace," indicated that Krug was wearing the brace because he could not post bond, and advised the jury that, in instances where a defendant cannot post bond, it is standard for the defendant to wear a leg brace.  Vol. 16, p. 1149.  This information was relayed only once to the jury and there is no indication that the leg restraint was visible throughout the trial.

Krug has not shown that his appellate counsel's decision not to raise as error trial counsel's failure to object to the one-time statement made to the jury was objectively unreasonable or prejudicial, or that the Ohio Court of Appeals unreasonably applied the law to the facts and circumstances in this case.  Accordingly, his eighth ground for relief is without merit and should be denied.

### vii.    Ground Nine

As his ninth ground for relief, Krug asserts that appellate counsel was ineffective for failing to raise as error trial counsel's failure to move for a mistrial based on the trial court not exploring the impact of two juror distractions: (1) a juror drawing pictures of Krug; and (2) prosecutors whispering at counsel table without covering their microphones. Doc. 1, p. 2-21.  As

reflected in the Ohio Court of Appeals' decision, the trial court took prompt and appropriate action to rectify both situations.  Doc. 9, Exhibit 42, p. 8.

In regard to the juror drawing pictures, which included a picture of Krug with a knife, defense counsel asked that the juror be removed. Vol. 13, p. 672.  The juror, Kevin Gerald, was admonished and discharged.  Vol. 13, p. 675-679.  Additionally, the jury was advised that the Mr. Gerald was discharged.  Vol. 13, p. 680.

In regard to a juror bringing to the trial judge's attention the fact that she could sometimes hear prosecutors talking through their microphones when they were speaking with one another, the record shows that this minor situation was promptly addressed.  The trial judge inquired into the matter.  Vol. 14, p. 887.  The prosecutor indicated he thought that the microphone was off, he apologized, and he agreed to press the red button to turn the microphone off in the future.  Vol. 14, p. 887.

Krug relies on *Remmer v. United States*, 347 U.S. 227 (1954) to argue that the trial court should have investigated the impact of these two distractions on the jurors.  Doc. 14, p. 25-26.  In *Remmer* there was an allegation that an unnamed person had spoken with a juror.  *Remmer*, 347 U.S. 227.  During the pendency of the trial in that case, the trial judge, acting ex parte, sent an F.B.I. agent to speak with the juror and prepare a report.  *Id.*  The trial judge and the prosecutor alone considered the F.B.I. report and determined that nothing further should be done or said regarding the matter. *Id.*

The circumstances set forth in Krug's ninth ground for relief are far from comparable to those in *Remmer*.  Krug has not shown that his appellate counsel's decision not to raise as error trial counsel not moving for a mistrial based on the two instances described above was objectively unreasonable or prejudicial or that the Ohio Court of Appeals unreasonably applied

the law to the facts and circumstances in this case.  Accordingly, his ninth ground for relief is without merit and should be denied.

Based on the foregoing, Krug's second through ninth grounds for relief are without merit and should be denied.

### V. Conclusion and Recommendation

For the reasons stated above, Krug is not entitled to relief on any of his ten grounds for relief.  Accordingly, the undersigned recommends that Krug's petition for writ of habeas corpus (Doc. 1) be **DENIED** and this action be dismissed with prejudice.

Krug's request for leave to supplement his Traverse (Doc. 17) is hereby **DENIED** and his request to expand the record (Doc. 11) is **DENIED** as moot.

Dated: April 11, 2012

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).